### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Kangol LLC | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No.: |
| The Partnerships and Unincorporated Associations Identified on Schedule A | ) |
| | ) |
| Defendants. | ) |

### DECLARATION OF SEAN MCCABE

I, Sean McCabe, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am Managing Director for Kangol LLC ("Kangol"). I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, Kangol's products and trademarks. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Kangol is a renowned British fashion brand with a rich history dating back to the 1920s. Originally founded in 1938 as a small beret manufacturer in the working-class neighborhoods of London, Kangol gained prominence during World War II when it supplied berets to the British armed forces. In the post-war era, the brand continued to grow and diversify its product range, becoming a symbol of British craftsmanship and style. In the 1960s, Kangol's kangaroo design mark became iconic, and the brand became associated with the emerging youth

culture and music scene. The Kangol brand became especially popular in the hip-hop and jazz communities, with artists like LL Cool J often sporting Kangol hats. Today, Kangol's hats, especially Kangol's "Bucket" and Newsboy" style hats, are among the most recognizable headwear products in the world.

4. Kangol's trademarks are a core component of the Kangol brand. Kangol's trademarks are distinctive, and consumers rely on Kangol's trademarks to identify genuine Kangol products that are manufactured to Kangol's high quality standards. Many of Kangol's trademarks are registered with the United States Patent and Trademark Office. Typically, Kangol's hats include at least one of the following marks which are collectively referred to herein as the "Kangol Marks."

| Registration Number | Trademark |
|---|---|
| 535,357; 1,011,576; 1,490,292; 3,017,272; 4,153,667; 4,384,997 | KANGOL (standard character word mark) |
| 1,372,671; 4,204,801; 4,384,996 | [Kangaroo logo with KANGOL text] |
| 2,235,981; 2,278,532 | [Kangaroo logo with KANGOL text] |

| 3,787,973 |  |
|---|---|

5. The above-listed U.S. registrations for the Kangol Marks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Kangol has spent significant time, effort, and resources creating goodwill associated with the Kangol Marks, which are synonymous with high quality apparel. True and correct copies of the United States Registration Certificates for the Kangol Marks are attached hereto as **Exhibit 1**.

6. Genuine Kangol branded hats, which range in price from around $35–$85, are sold to consumers in the United States through authorized retailers and the Kangol.com website. A significant portion of Kangol's sales of its genuine Kangol branded hats are sold through its Kangol.com website.

7. The popularity of the Kangol brand has resulted in significant counterfeiting of Kangol products utilizing the Kangol Marks. In recent years, Kangol has identified many e-commerce stores offering counterfeit Kangol products on online marketplace platforms such as AliExpress, Alibaba, DHgate, Amazon, eBay, Walmart, and Temu, including e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which are offering for sale and/or selling counterfeit products, including hats, either illegitimately branded with the Kangol Marks, otherwise falsely described as Kangol products, or both.

8. I have assisted in investigating the online infringement and counterfeiting of our Kangol Marks and found many entities, including the Defendants using the Seller Aliases, to be selling counterfeit Kangol products across many different e-commerce platforms. Upon review

of each of the Seller Aliases' product listings contained in the attached **Exhibit 2**, I determined that counterfeit Kangol products were being offered for sale to residents of the United States, including Illinois residents. This was evident from a variety of indicators, including the price at which the counterfeit Kangol products were offered for sale, the quantity in which the counterfeit Kangol products were offered for sale, the style of the counterfeit Kangol products offered for sale, the country from which the counterfeit Kangol products were offered for sale, and/or product images in which the storeowner attempted to partially obscure the Kangol Mark(s) on the counterfeit product in what appears to be an attempt to evade detection. Specifically, the counterfeit Kangol products are all sold for less than Kangol sells its products at retail, are sold in bulk, are styles that Kangol does not offer, and/or are sold from China or another foreign country. True and correct copies of screenshot printouts showing the active product listings of the e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.[1]

9. Defendants use the Kangol Marks, without authorization, to deceive consumers. Based, in part, on the remarkably cheap prices most of the counterfeit Kangol products are sold at, the counterfeit Kangol products Defendants are selling appear to be of low quality and made of cheap materials. Defendants use the Kangol Marks to make consumers believe that the low-quality counterfeit Kangol products they are selling are high-quality authentic Kangol products. None of the Defendants are authorized distributors or retailers of genuine Kangol products.

10. Even though the Defendants operate under different Seller Aliases, the product listings and/or e-commerce stores often share notable common features, such as similarities in price and/or quantity, the same unique wording and/or phrasing, and/or the use of the same or very similar images, suggesting that the Seller Aliases are operated by the same or interrelated

---

[1] The screenshot printouts in Exhibit 2 are annotated to highlight relevant, unauthorized uses of the Kangol Marks.

4

parties. As just one example, the FAQ sections for at least Defendant Nos. 14, 17, 18, 21, and 23 (identified in Schedule A to the Complaint) use the same unique wording/phrasing:



**FAQ**

**1. who are we?**
We are based in Zhejiang, China, start from 2009, sell to Mid East(38.00%),North America(29.00%),Domestic Market(16.00%),Western Europe(7.00%),South Asia(6.00%),Oceania(2.00%),Northern Europe(2.00%). There are total about 11-50 people in our office.

**2. how can we guarantee quality?**
Always a pre-production sample before mass production;
Always final Inspection before shipment;

**3. what can you buy from us?**
Wool Scarves,Silk Scarves

**4. why should you buy from us not from other suppliers?**
null

**5. what services can we provide?**
Accepted Delivery Terms: FOB,CIF;
Accepted Payment Currency:USD,CNY;
Accepted Payment Type: T/T,L/C,D/P D/A,PayPal,Western Union,Cash,Escrow;
Language Spoken:English,Chinese

Defendant No. 14

**FAQ**

**1. who are we?**
We are based in Guangdong, China, start from 2015, sell to North America(55.00%),Oceania(10.00%),Domestic Market(8.00%),Western Europe(5.00%),Northern Europe(5.00%),Eastern Europe(3.00%),Southeast Asia(3.00%),Central America(3.00%),South America(2.00%),Eastern Asia(2.00%),Southern Europe(2.00%),South Asia(2.00%). There are total about 11-50 people in our office.

**2. how can we guarantee quality?**
Always a pre-production sample before mass production;
Always final Inspection before shipment;

**3. what can you buy from us?**
Cap & Hat,Clothing

**4. why should you buy from us not from other suppliers?**
1. Low MOQ 2. 20 more experience 3. High & middle level products in quality 4. Fast delivery, 2000pcs per day 5. Cost control for big orders & factory inspection offer 6. Professional quality control and skillful workers with own production lines

**5. what services can we provide?**
Accepted Delivery Terms: FOB,CIF,CIP,DDP;
Accepted Payment Currency:USD,EUR,CNY;
Accepted Payment Type: T/T,L/C,PayPal,Western Union,Cash;
Language Spoken:English,Chinese

Defendant No. 17

## FAQ

**1. who are we?**
We are based in Zhejiang, China, start from 2016, sell to North America(70.00%), Western Europe(15.00%), Oceania(7.00%), Africa(4.00%), Southeast Asia(2.00%), South Asia(2.00%). There are total about 5-10 people in our office.

**2. how can we guarantee quality?**
Always a pre-production sample before mass production;
Always final Inspection before shipment;

**3. what can you buy from us?**
Hats

**4. why should you buy from us not from other suppliers?**
null

**5. what services can we provide?**
Accepted Delivery Terms: null;
Accepted Payment Currency: null;
Accepted Payment Type: null;
Language Spoken: null

Defendant No. 18

## FAQ

**1. who are we?**
We are based in Zhejiang, China, start from 2012, sell to Southern Europe(9.00%), Domestic Market(7.00%), South Asia(7.00%), North America(7.00%), Northern Europe(7.00%), Central America(7.00%), Western Europe(7.00%), Eastern Asia(7.00%), Mid East(7.00%), Oceania(7.00%), Africa(7.00%), Southeast Asia(7.00%), Eastern Europe(7.00%), South America(7.00%).
There are total about 5-10 people in our office.

**2. how can we guarantee quality?**
Always a pre-production sample before mass production;
Always final Inspection before shipment;

**3. what can you buy from us?**
jewelry, scarves, necklace, Glasses chain, Hair accessories

**4. why should you buy from us not from other suppliers?**
null

**5. what services can we provide?**
Accepted Delivery Terms: FOB;
Accepted Payment Currency: USD, EUR, JPY, CAD, AUD, HKD, GBP, CNY, CHF;
Accepted Payment Type: T/T, L/C, MoneyGram, Credit Card, PayPal, Western Union, Cash, Escrow;
Language Spoken: English, Chinese, Spanish, Japanese, Portuguese, German, Arabic, French, Russian, Korean, Hindi, Italian

Defendant No. 21

> **FAQ**
>
> **1. who are we?**
> We are based in Zhejiang, China, start from 2023,sell to North America(20.00%),Eastern Asia(20.00%),Eastern Europe(10.00%),Southeast Asia(10.00%),Western Europe(10.00%),Central America(10.00%),Southern Europe(10.00%),South America(5.00%),Northern Europe(5.00%). There are total about 11-50 people in our office.
>
> **2. how can we guarantee quality?**
> Always a pre-production sample before mass production;
> Always final Inspection before shipment;
>
> **3.what can you buy from us?**
> Hoodie,shirt,cat,scarf,sock
>
> **4. why should you buy from us not from other suppliers?**
> Yiwu Mingqi Trading Co., Ltd. mainly provides tide brand men's and women's clothing design, has a printing garment factory, and produces one-stop product supply chain services.
>
> **5. what services can we provide?**
> Accepted Delivery Terms: null;
> Accepted Payment Currency:null;
> Accepted Payment Type: null;
> Language Spoken:null

Defendant No. 23

11. The Defendants' unauthorized use of the Kangol Marks in connection with the offering for sale or sale counterfeit Kangol products is confusing and will continue to confuse customers and tarnish Kangol's reputation and goodwill. This harm is irreparable. Monetary damages cannot adequately compensate Kangol for Defendants' counterfeiting because monetary damages fail to address the damage to Kangol's reputation and goodwill.

12. Kangol will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26 day of February 2024 at 2:30pm.

DocuSigned by:
*Sean McCabe*
Sean McCabe
Managing Director, Kangol LLC