## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Kangol LLC | ) <br> ) <br> ) |
| Plaintiff, | ) |
| v. | ) <br> ) <br> ) Case No.: 24-cv-1636 |
| The Partnerships and Unincorporated Associations Identified on Schedule A | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM IN SUPPORT OF KANGOL'S *EX PARTE* MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND OTHER RELIEF**

## I. INTRODUCTION

Kangol seeks much-needed immediate relief from this Court to halt rampant counterfeiting by foreign online sellers. Kangol has investigated and found hundreds of online counterfeiters selling fake "Kangol" hats, unlawfully trading off the goodwill and popularity of the Kangol brand. Kangol has named 25 of these counterfeiters, who sell on Alibaba and AliExpress (the "Platforms"), as Defendants in this case, identifying them by the storefront aliases listed in Schedule A to the Complaint.

Without the injunctive relief Kangol requests in its Motion,[1] the Defendants' counterfeiting will continue to irreparably harm Kangol. Kangol makes high-quality handmade apparel and is particularly known for its famous "Bucket" and "Newsboy" hats. Kangol has invested significant resources associating its goodwill and reputation with its Kangol branding. The Kangol brand is famous in the United States, but the Defendants' widespread counterfeiting stands to tarnish Kangol's well-earned reputation and displace Kangol's marketshare. Moreover, the Defendants are also deceiving countless customers into buying knock-off products under the guise that the fake products are authentic handmade Kangol hats. Thus, immediate injunctive relief will also prevent United States customers from being duped into buying fake goods.

Kangol also needs immediate *ex parte* relief to stop the Defendants from transferring their ill-gotten gains from their merchant accounts to offshore bank accounts before Kangol can get the relief it seeks. Foreign online counterfeiters are known to provide false identities to e-commerce platforms, then disappear and transfer their funds to unknown offshore accounts at the first sign of IP enforcement, only to later reappear under new storefront aliases. Unless Kangol

---

[1] "Motion" refers to Kangol's *Ex Parte* Motion for Entry of Temporary Restraining Order and Other Relief.

procures an *ex parte* asset freeze, it will likely be impossible to ascertain and recover the Defendants' profits attributable to their counterfeit sales.

Kangol's evidence that the Defendants are selling counterfeit Kangol goods and infringing Kangol's trademarks is strong, and Kangol is likely to succeed on the merits of its claims. Kangol owns 20 registered trademarks, 12 are asserted in this case (the "Kangol Marks"). (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 4.) The Defendants all use one or more of the Kangol Marks either in describing their products or affixed to the products themselves. The products are all sold for less than Kangol sells its hats at retail, are styles that Kangol does not offer, are sold in bulk, and/or are sold from China or another foreign country, all indicating that the Defendants' products are counterfeit. (Declaration of Sean McCabe at ¶ 8.) Nor has Kangol authorized any of the Defendants to use the Kangol Marks. (*Id.* at ¶ 9.)

Further, the balance of harms and public interest both favor injunctive relief. Without an injunction, Kangol's hard-earned reputation and goodwill will continue to be harmed, and Kangol will continue to lose market share to these counterfeiters. And given that Kangol is very likely to succeed on the merits of its case, the only harm the injunction will cause the Defendants will be that they can no longer profit from infringing the Kangol Marks. Moreover, the public has an interest in trademark laws being enforced to eliminate counterfeit goods from entering the marketplace.

Kangol has thus filed the Complaint and Motion in this case to enforce its Kangol Marks and stop the Defendants' widespread trademark infringement and counterfeiting. Without the injunctive relief requested herein (more particularly described in Kangol's Proposed Sealed Temporary Restraining Order submitted with this Motion), the Defendants will continue to irreparably harm Kangol and deceive the public. Accordingly, Kangol requests an order:

1. Temporarily restraining Defendants from unlawful use of the Kangol Marks;

2. Temporarily restraining Defendants' assets to preserve Kangol's right to equitable accounting, including restraining Defendants from transferring the assets or use or control of the Platform storefronts being used and controlled by Defendants to other parties;

3. Allowing expedited discovery allowing Kangol to discover the Defendants' email addresses from the Platforms and inspect and copy the Platforms' records relating to the manufacture, distribution, offers for sale, and/or sale of the Counterfeit Kangol Products and Defendants' financial accounts; and

4. Giving Kangol leave to effect service of the complaint, temporary restraining order, and a motion for preliminary injunction by email.

## II. FACTUAL BACKGROUND

Kangol has been selling hand-made, high-quality hats under the "Kangol" brand since 1938. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 3.) Kangol's "Bucket" and "Newsboy" style hats, both shown below, are particularly famous. (*Id.*)



Kangol has spent significant resources promoting its brand and the Kangol Marks (an example shown below), which have become a mainstay in popular culture since the 1980s and

are widely known to signify Kangol's unmatched craftmanship and quality. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 4–5.)



Kangol offers its popular, high-quality hats through authorized brick-and-mortar retailers and its own online store at www.kangol.com, through which Kangol makes a significant portion of its sales. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 6.) Kangol's hats range in price from around $35–$85. (*Id.*)

The Defendants offer Counterfeit Kangol Products through deceptive online storefronts on the Platforms. Online counterfeiters, like the Defendants, are known to maintain multiple storefronts on e-commerce websites, such as the Platforms, by providing false and/or incomplete identifying information, which allows them to evade enforcement efforts. (Declaration of T. Tucker, ¶¶ 3, 4, 10.) Through these Platforms, the Defendants have access to millions of online customers to which the Defendants promote and offer their Counterfeit Kangol Products for a fraction of the retail price (sometimes for as little as $2.50), often in bulk.

### III. ARGUMENT

#### A. A Temporary Restraining Order is Appropriate and Warranted in this Case.

The Defendants' widespread willful counterfeiting is irreparably harming Kangol and must be immediately stopped. Moreover, *ex parte* relief is needed so that the Defendants cannot undermine the equitable relief Kangol is seeking (*e.g.*, an accounting of the Defendants' profits

attributable to its counterfeiting) by moving their funds to offshore accounts upon notice of this lawsuit.

To obtain a temporary restraining order, Kangol must demonstrate: (1) a likelihood of success on the merits; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm if the relief is not granted. *Roadget Business PTE. Ltd. V. PDD Holdings Inc.*, No. 1:22-cv-07119, 2023 WL 4865005, at *2 (N.D. Ill. July 31, 2023). A court may grant a temporary restraining order under Federal Rule of Civil Procedure 65(b) without notice to the defendants if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Such relief is warranted and appropriate in this case.

1. <u>Kangol is likely to succeed on the merits of its trademark infringement and counterfeiting claims.</u>

As demonstrated by the screenshots attached to the Declaration of Sean McCabe (Exhibit H to the Complaint) as Exhibit 2, the Defendants are infringing Kangol's Kangol Marks by marketing, advertising, offering to sell, and selling their Counterfeit Kangol Products. To demonstrate trademark infringement, counterfeiting, and/or false designation claim under the Lanham Act, Kangol must establish that (1) its mark is protectable and (2) the Defendants' use of the mark is likely to confuse consumers. *Phoenix Entertainment Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016); *Tory Burch LLC v. Partnerships and Unincorporated Associations Identified on Schedule A*, No. 13 C 2059, 2013 WL 1283824, at *3. Kangol can demonstrate both elements.

First, Kangol owns valid federal trademark registrations for its Kangol Marks. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶¶ 4, 5, Exhibit 1.) Moreover, the Kangol Marks are distinctive, and several have become incontestable under 15 U.S.C. § 1065. (*Id.*) Accordingly, Kangol meets the first element. *See Tory Burch*, 2013 WL 1283824, at *3.

Second, Defendants' use of the Kangol Marks in connection with marketing, advertising, offering to sell, and selling their Counterfeit Kangol Products is likely to confuse consumers about the source of Defendants' goods. Despite using marks that are substantially similar or identical to the Kangol Marks in connection with selling their goods, the Defendants' goods are *not* made by or otherwise authorized, sponsored, or licensed by Kangol, making them counterfeit goods. *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 459 F. Supp. 3d 1058, 1091 (N.D. Ill. 2020). Such counterfeiting creates a presumption of confusion: "Under the counterfeit presumption test, a court presumes likelihood of confusion when a defendant has produced counterfeit goods to capitalize on the popularity of another's product." *Id.* (citing *Microsoft Corp. v. Rechanik*, 249 F. Appx. 476, 479 (7th Cir. 2007)). Kangol never authorized any of the Defendants to use the Kangol Marks, but the Defendants are selling and offering for sale Counterfeit Kangol Products that either have spurious marks substantially similar or identical to the Kangol Marks directly on the products or use such marks in the product descriptions. (*See* Declaration of Sean McCabe, Exhibit H to the Complaint, at Exhibit 2.)

Notwithstanding the presumption of confusion given to counterfeit products, Defendants' infringing marks also satisfy the seven-factor likelihood of confusion test. Courts look to the following seven factors in determining whether a likelihood of confusion exists: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by

consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *Id.* at 1093. As shown in Kangol's evidence of infringement, (Declaration of Sean McCabe, Exhibit H to the Complaint, at Exhibit 2), many of the Defendants use one or more marks that are identical to the Kangol Marks directly on the products they are selling. For example:



Other Defendants use the Kangol word mark in their product descriptions, falsely designating the products as authentic Kangol products. For example, "2023 in stock ny bandan kangol white

Katrina men women denim jean bucket hats set caps" and "wholesale summer beach outdoor fishing woman man reversible printed kangol bucket hat". (*See* Schedule A; *see* Declaration of Sean McCabe, Exhibit H to the Complaint, at Exhibit 2.) Accordingly, the first factor weighs in favor of Kangol. The second and seventh factors also weigh in favor of Kangol. Each of the Defendants use the counterfeit marks in connection with selling hats that are very similar to hat products Kangol sells, clearly attempting to palm off their products as authentic Kangol products. With respect to the third factor, the Defendants and Kangol both offer their respective products to consumers through the internet, which also indicates a likelihood of consumer confusion. *Tory Burch LLC*, 2013 WL 1283824, at *3. The fourth factor also weighs in favor of Kangol, given that the consumer base for the Defendants and Kangol is a broad and diverse group of individuals (*i.e.*, consumers using the internet). In such a case, where the group includes internet users and is "not amenable to any broad generalizations regarding sophistication . . . the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Id.* at *4 (internal quotations omitted). The fifth factor, the strength of the Kangol Marks, also weighs in favor of Kangol. Kangol has employed its Kangol Marks for years and they have gained broad popularity in the United States. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 3.) Kangol's genuine hats are widely available at retail stores and can be purchased online at Kangol's own website, www.kangol.com. (Declaration of Sean McCabe at ¶ 6.) Kangol's Kangol Marks are widely known and are distinctive—in fact, many have become incontestable. (*Id*. at ¶¶ 3–5.) Moreover, given the nature of the Defendants' use of the Kangol word mark in connection with describing and marketing its Counterfeit Kangol Products, internet consumers are likely to be diverted to the Defendants' online stores when searching online for Kangol hats, creating "initial interest confusion." *See*

*Tory Burch*, 2013 WL 1283824, at *5. Altogether, these factors markedly weigh decisively in Kangol's favor and demonstrate a likelihood of confusion.

        2. <u>Kangol has no adequate remedy at law and the Defendants have and will continue to irreparably harm Kangol.</u>

The Defendants' counterfeiting has and will continue to irreparably harm Kangol, including by tarnishing Kangol's reputation and harming Kangol's marketshare, unless it is immediately enjoined. This Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 431 (7th Cir. 2001). Indeed, irreparable harm is presumed in cases of trademark infringement. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).

Kangol has spent significant time, effort, and resources creating goodwill associated with the Kangol Marks. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 5.) The Kangol Marks are synonymous with high quality apparel. (Declaration of Sean McCabe, at ¶ 5.) Kangol proudly proclaims on its website that it manufactures its hats in England and the United States and the hats "are crafted by hand with traditional methods that simply can't be replaced by large machines and mass production."[2] As Defendants' continue to use spurious Kangol Marks, Kangol has no control over the quality of the Counterfeit Kangol Goods or where they are manufactured. Most of the Defendants' goods appear to be manufactured in China and are often offered in mass quantities, even in the millions. (*See* Declaration of Sean McCabe, Exhibit H to the Complaint, at Exhibit 2.) As indicated by the remarkably cheap prices most of the Counterfeit Kangol Products are sold at, the Counterfeit Kangol Products appear to be of low

---

[2] https://www.kangol.com/collections/us-collection#:~:text=Kangol%20was%20born%20in%20England,England%20and%20the%20United%20States.

9

quality and made of cheap materials. (Declaration of Sean McCabe at ¶ 9). Without a restraining order, the Defendants will continue to harm Kangol through damage to Kangol's goodwill, brand confidence, and reputation. *See Tory Burch*, 2013 WL 1283824, at *8; *see also Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Further, allowing the mass of Defendants to offer hundreds of Counterfeit Kangol Products online undermines Kangol's exclusivity over the sale of the products bearing the Kangol Marks and a loss of future sales. *See Tory Burch*, 2013 WL 1283824, at 8.

> 3. The balance of equities favors Kangol and a temporary restraining order will benefit the public interest.

An injunction under these circumstances is fair and equitable and would benefit the public interest. In assessing the equities, courts apply a sliding scale test: "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

As demonstrated above, the Defendants have little chance of showing they have a right to use the Kangol Marks in selling and marketing their counterfeit goods. Moreover, without prompt *ex parte* relief, the Defendants are likely to continue selling their Counterfeit Kangol Products under different storefronts and to frustrate Kangol's efforts to obtain the equitable relief it seeks, including an accounting of their profits, as the Defendants are likely to move their proceeds from the Platforms to offshore accounts. (Exhibit A, Declaration of Todd R. Tucker, at ¶¶ 11, 12.) The only harm an injunction would cause the Defendants is their inability to profit from their willful infringement. But this harm cannot weigh in favor of denying an injunction.

*See Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Ind. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996) (balancing of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark"). On the other hand, without an injunction, hundreds of counterfeiters will continue to sell, in bulk, Counterfeit Kangol Products, tarnishing Kangol's goodwill and reputation and harming Kangol's marketshare. The balance of equities thus weighs in favor of granting an injunction.

An injunction would also benefit the public interest. Preventing masses of counterfeit goods from flooding the marketplace and causing significant consumer confusion will benefit the public. *See Eli-Lilly*, 233 F.3d at 469 ("the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion"). This is, in fact, one of the purposes of trademark law. *See Tory Burch*, 2013 WL 1283824, at *9 ("The Seventh Circuit stated long ago that 'the trademark laws . . . are concerned not alone with the protection of a property right existing in the individual, but also with protection of the public from fraud and deceit.'") (quoting *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F. 2d 914, 907 (7th Cir. 1950)). Given the balance of equities favoring Kangol and the public interest in preventing consumer confusion, an injunction is appropriate in this case.

### B. *Ex parte* relief is warranted in this case.

If the Defendants are given notice of these proceedings before an injunction can be effectuated (in particular, an asset freeze), the equitable relief Kangol seeks will very likely be frustrated. Under Federal Rule of Civil Procedure 65(b)(1), a court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney if: (A) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in

opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Kangol's requested equitable relief, in particular in the form of an accounting and disgorgement of profits, will likely be impossible if the Defendants are given notice of this lawsuit before the Defendants' assets are frozen. The Defendants all sell their Counterfeit Kangol Products through storefront aliases on Alibaba and AliExpress. (*See* Declaration of Sean McCabe, Exhibit H to the Complaint, at Exhibit 2.) Online counterfeiters are notorious for shutting down their storefronts at the first sign of IP enforcement, moving their proceeds from the storefront to offshore accounts through intermediaries like PayPal or AliPay, then reopening new storefronts under new aliases to continue selling the counterfeit goods. (Exhibit A, Declaration of Todd R. Tucker, at ¶¶ 3, 4, 10, 11.) This game of Whack-A-Mole typically frustrates any real enforcement and makes an accounting of profits impossible, as the funds from the counterfeit sales are inaccessible once they are removed from the platform and the infringer refuses to appear in the case and participate in discovery. (Declaration of Todd R. Tucker at ¶¶ 3, 4, 10, 11.) Courts in this District frequently grant *ex parte* injunctive relief under these same circumstances. *See, e.g.*, *Deckers Outdoor Corporation v. Partnerships and Unincorporated Associations Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013); *Antsy Labs, LLC v. Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *1 (N.D. Ill. Nov. 23, 2022); *Tory Burch*, 2013 WL 1283824, at *9. Kangol's request for *ex parte* relief in this case is likewise appropriate.

**C. The equitable relief Kangol seeks is appropriate.**

The injunctive relief Kangol requests is appropriate and necessary. The Lanham Act authorizes such injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a).

1. <u>A temporary restraining order enjoining the Defendants' unlawful conduct is appropriate.</u>

As set forth above, unless the Defendants' unlawful counterfeiting is immediately enjoined, Kangol will continue to suffer irreparable harm, including harm to its goodwill, reputation, brand confidence, and market share. (Declaration of Sean McCabe, Exhibit H to the Complaint, at ¶ 11.) Kangol's request for a temporary restraining order requiring Defendants to cease all use of the Kangol Marks, or substantially similar marks, on or in connection with all e-commerce stores operating under the Seller Aliases is thus appropriate. Courts in this District have granted such relief under similar circumstances. *See, e.g, Tory Burch*, 2013 WL 1283824, at *10.

2. <u>A temporary asset freeze preventing the Defendants from fraudulently transferring its assets is appropriate.</u>

As explained above, a temporary injunction freezing Defendants' assets is also appropriate to preserve Kangol's ability to seek an equitable accounting and disgorgement of the Defendants' profits attributable to their infringement and counterfeiting. Kangol may and does seek an accounting and disgorgement of profits under the Lanham Act. 15 U.S.C. § 1117(a). Without an *ex parte* asset restraint, the Defendants will likely withdraw its funds from the Platforms and intermediary accounts into offshore bank accounts out of this Court's jurisdiction, making such an accounting and disgorgement impossible. (Exhibit A, Declaration of Todd R.

Tucker, at ¶¶ 3, 4, 10, 11.) This Court has authority to implement an *ex parte* asset restraint to preserve Kangol's ability to seek its requested equitable relief. *See Deckers*, 2013 WL 12314399, at *2. Courts in this District have exercised this authority in similar circumstances in the past and should do so here as well. *See id.*; *see also, e.g.*, *Antsy Labs*, 2022 WL 17176498, at *1. Kangol has demonstrated a strong likelihood of success on the merits of its trademark infringement and counterfeiting claims and unless the Defendants' assets are restrained, Defendants will likely move their proceeds to an offshore bank account undermining an accounting of their profits.

### 3. Expedited discovery is appropriate.

Kangol's request for expedited discovery is warranted, as it will allow Kangol to discover facts necessary to effectively implement the asset restraint and serve the Defendants. Where good cause exists, a court may allow expedited discovery under Federal Rule of Civil Procedure 26(b)(1), including the subject matter that Kangol requests. *See Tory Burch*, 2013 WL 1283824, at *10 ("To determine whether to authorize expedited discovery in a particular case, courts generally apply a 'good cause' standard.") Good cause exists in this case. The Defendants are located overseas, and online counterfeiters often go to great lengths to conceal their real identities and avoid detection. (Exhibit A, Declaration of Todd R. Tucker, at ¶¶ 3, 4, 8, 9.) This makes it likely that the restraining order would be ineffective unless Kangol knows where the Defendants maintain their ill-gotten funds, for example in accounts maintained by the Platforms or by intermediary payment accounts like PayPal or Alipay. (*See* Declaration of Todd R. Tucker at ¶¶ 10–12.) Further, discovering the Defendants' accurate email addresses is likely the most reliable way to give the Defendants reasonable notice of the proceedings after a temporary restraining order is entered. *See Tory Burch*, 2013 WL 1283824, at *9. Kangol's requested discovery is narrowly targeted to what it needs to prevent further irreparable harm.

### D. Service of process by email is warranted in this case.

Service of process by email is warranted in this case because (1) it is very difficult to know the true identities and locations of the Defendants given that the Defendants are primarily Chinese entities that sell counterfeit goods on online sales platforms and typically do not disclose reliable information about their identities and locations in connection with their online storefronts and (2) email service will be reliable given that the Defendants rely on email to operate their online businesses. (Exhibit A, Declaration of Todd R. Tucker, at ¶ 13.) Allowing email service will facilitate prompt service, allow this case to move forward expeditiously, and is authorized under the law. *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Assocs. Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021). If this Court grants Kangol's requested TRO, Kangol will provide the Platforms with notice of the order, obtain contact email addresses for Defendants from the Platform, and quickly effectuate email service under Federal Rule of Civil Procedure 4(f)(3) once the asset freeze is in place.

### E. Kangol's proposed bond is appropriate.

The amount of security that a plaintiff must post when a TRO or preliminary injunction issues is within the Court's sound discretion. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper. . ."); *see also Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*, No. 20-cv-3375, 2020 WL 3960451, at *14 (N.D. Ill. July 13, 2020). Kangol respectfully requests that the Court require a bond of no more than $10,000, given the strong evidence of infringement and counterfeiting and the short duration of the requested TRO. *See, e.g.*, *Tory Burch*, 2013 WL 1283824, at *10 ($10,000 bond); *Roadget Business Pte. Ltd. V. PDD*

*Holdings Inc.*, No. 1:22-cv-07119, 2023 WL 4865005, at *12 (N.D. Ill. July 31, 2023) ($10,000 bond).

## IV. CONCLUSION

Kangol needs immediate, *ex parte* relief to effectively enforce its Kangol Marks against rampant online counterfeiting. Kangol's case on the merits is strong—the evidence decisively demonstrates the Defendants are infringing the Kangol Marks and selling counterfeit goods. And the Defendants' infringement and counterfeiting is irreparably harming Kangol, including by tarnishing its brand and goodwill. Without the requested injunctive relief, the Defendants will likely continue their infringement with impunity. For these reasons, Kangol requests that this Court grant its Motion and enter Kangol's Proposed Sealed Temporary Restraining Order.

| | |
|---|---|
| Date: February 27, 2024 | Respectfully submitted, |
| | */s/ Todd R. Tucker* |
| | Todd R. Tucker (65617) |
| | ttucker@calfee.com |
| | Yizhou Liu (93842) |
| | bliu@calfee.com |
| | Andrew W. Alexander (91167) |
| | aalexander@calfee.com |
| | Brian P. Doney (101466) |
| | bdoney@calfee.com |
| | Calfee, Halter & Griswold LLP |
| | The Calfee Building |
| | 1405 East Sixth Street |
| | Cleveland, Ohio 44114 |
| | (216) 622-8200 (Telephone) |
| | (216) 241-0816 (Facsimile) |
| | |
| | *Attorneys for Plaintiff Kangol LLC* |