UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kangol LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:24-cv-01636 |
| v. | ) | |
| | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| The Partnerships and Unincorporated | ) | |
| Associations Identified on Schedule A | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Kangol LLC ("Plaintiff" or "Kangol") brings this trademark infringement and counterfeiting action against the Partnerships and Unincorporated Associations identified on Schedule A (collectively, "Defendants") and states as follows:

1. This is an action for trademark counterfeiting and infringement of Kangol's federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), all arising from the Defendants' unauthorized use of Kangol's trademarks in connection with the marketing, advertising, promotion, offering for sale, and/or sale of the Defendants' counterfeit apparel.

2. Kangol brings this case to stop and seek damages for widespread trademark infringement and counterfeiting by e-commerce sellers on several e-commerce platforms, including Alibaba and AliExpress (the "Platforms")—platforms on which counterfeiters are notorious for selling counterfeit goods. Dozens of e-commerce sellers on the Platforms are selling and/or offering for sale unauthorized and unlicensed apparel under the trademarked name

1

"Kangol" and/or the Kangol design trademark including various articles of headwear (the "Counterfeit Kangol Products"). The Defendants, using one or more of the seller aliases identified on Schedule A (the "Seller Aliases"), create e-commerce stores on the Platforms to advertise, offer for sale, and sell the Counterfeit Kangol Products.

3. The rapid growth of e-commerce and e-commerce platforms has facilitated online trafficking in counterfeit and pirated goods. In 2021 alone, Customs and Border Protection seized over $3.3 billion in illegitimate goods. (Exhibit A, 2020 Intellectual Property Rights Seizure Statistics, Fiscal Year 2021, U.S. Customs and Border Protection, Dkt. #1-1.) The majority of the goods seized by CBP arrived from China and Hong Kong. (Exhibit B, Combating Trafficking in Counterfeit and Pirated Goods, US Dept. of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), Dkt. #1-2.) Apparel, like Kangol's genuine goods, is the most counterfeited type of good. (*Id.*) Counterfeiters use e-commerce platforms to sell their counterfeit products to large numbers of potential consumers with near impunity. By setting up deceptive storefronts on e-commerce platforms such as the Platforms here, the fraudulent sellers operate with an air of legitimacy and without any efficient or effective modes for intellectual rights holders to enforce their rights. Enforcing intellectual property rights is significantly complicated by e-commerce platforms' policies that permits sellers that have one or more storefronts closed for repeated IP infringement to operate additional stores. (*See* Exhibit C, 2023 Review of Notorious Markets for Counterfeiting and Piracy (explaining that Alibaba's policy of allowing a seller that had one storefront closed for repeated IP infringement to operate other storefronts "places onerous burdens on right holders."), 34, Dkt. #1-3.)

4. Counterfeiters are able to register their deceptive storefronts on e-commerce stores such as the Platforms without providing accurate and genuine identifying information.

(*See* Exhibit D, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. Int'l L. & Bus. 157, 186 (2020), Dkt. #1-4.) The U.S. Trade Representative has identified AliExpress (which is operated by Alibaba) on its "notorious markets" list, which identifies platforms on which substantial counterfeiting activity occurs. (Exhibit E, 2022 Review of Notorious Markets for Counterfeiting and Piracy, Dkt. #1-5.) Counterfeiters are able to sign up for storefronts on the Platforms, obscure their real identifies, and, when confronted with an enforcement attempt, avoid accountability and traceability by frequently changing names and addresses including opening new storefronts on the Platforms. (*See* Exs. D (Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. Int'l L. & Bus. 157, 186 (2020), Dkt. #1-4) and B (Combating Trafficking in Counterfeit and Pirated Goods, US Dept. of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), Dkt. #1-2.) As a result, American consumers now face a significant risk of purchasing counterfeit or pirated goods over the internet that they believe are authentic goods made or sponsored by the actual trademark holder. (Exhibit. F, Stopping Counterfeit Trafficking on E-Commerce Platforms Through Fines and Civil Penalties (Homeland Security), Dkt. #1-6.)

     5.     Accordingly, Kangol is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants from counterfeiting Kangol's registered trademarks, selling low quality products under Kangol's registered trademarks and to protect unknowing consumers from purchasing Counterfeit Kangol Products on U.S.-facing e-commerce platforms. Kangol has been and continues to be irreparably harmed through consumer confusion, dilution, and damage to its goodwill and valuable trademarks due to Defendants' conduct. Kangol thus seeks injunctive and monetary relief.

**JURISDICTION AND VENUE**

6. This Court has original subject matter jurisdiction over the claims in this action and venue is proper in this district under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338, 1391. This Court may exercise personal jurisdiction over Defendants because they each directly target their business activities toward consumers in the United States, including Illinois. Each Defendant operates one or more interactive commercial e-commerce stores through which Illinois residents can purchase Counterfeit Kangol Products. Defendants have aimed their e-commerce stores at Illinois by standing ready, willing, and able to ship their counterfeit goods to customers in Illinois in particular. Each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Kangol substantial injury in the State of Illinois.

**THE PARTIES**

*Plaintiff Kangol*

7. Kangol is a limited liability company organized and existing under the laws of the state of Delaware.

8. Kangol manufactures and sells a wide variety of clothing apparel and is particularly known for its popular line of headwear, including its famous "Bucket" and "Newsboy" hats, as further described below. Kangol's kangaroo design trademark is one of the most recognizable trademarks in the headwear industry.

*Defendants*

9. Upon information and belief, the Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least one of the Seller Aliases identified on the Amended Schedule A

and/or other seller aliases not yet known to Kangol, but which may become the subject of this action through amendment of this Complaint.

10. Tactics used by foreign counterfeiting operations to conceal their identities and the full scope of their operation, especially those that sell their counterfeit products through e-commerce platforms, make it virtually impossible for Kangol to know Defendants' true identities and the exact interworking of their counterfeiting network at this time. If Defendants provide additional credible information regarding their identities, Kangol will take appropriate steps to amend this Complaint.

11. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

12. Upon review of the Defendants' storefronts associated with each Seller Alias and upon information and belief, the Defendants are likely to be related or connected in their counterfeiting activities. For example, all Defendants appear to reside in the People's Republic of China, the Counterfeit Kangol Products bear similarities that may indicate they are sourced from the same manufacturers, including very similar prices, and the Seller Aliases use seller and product descriptions that have unique similarities suggesting they were authored by the same individual.

## FACTS

### *Kangol and its Marks*

13. Kangol is the owner of numerous valid and subsisting United States Trademark Registrations, including the following:

| Registration Number | Trademark |
|---|---|
| 535,357; 1,011,576; 1,490,292; 3,017,272; 4,153,667; 4,384,997 | KANGOL (standard character word mark) |
| 1,372,671; 4,204,801; 4,384,996 | (Kangaroo logo above KANGOL) |
| 2,235,981; 2,278,532 | (Kangaroo logo above KANGOL) |
| 3,787,973 | KANGOL (with X design) |

14. Each of these trademarks (the "Kangol Marks") are registered on the Principal Register in the United States Patent and Trademark Office for, among other things, clothing, including headwear. Many of the Kangol Marks have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit G (Dkt. #1-7) is a true and correct copy of the registration certificates for the Kangol Marks, which were issued by the United States Patent and Trademark Office.

15. Kangol has used the Kangol Marks in commerce throughout the world, including the United States, continuously for years in connection with the offering for sale, sale, marketing,

6

advertising, and promotion of its apparel. Shown below is a representative example of Kangol's apparel showing Kangol's use of one of its Kangol Marks on its website offering for sale its popular 504 style hat:



16. Kangol has spent substantial time, money, and resources building goodwill in the Kangol Marks through marketing, advertising, and promoting its apparel sold under the Kangol Marks. Kangol's Marks have achieved widespread recognition and fame by the general consuming public of the United States as a source of the goods of Kangol and are thus "famous" marks under 15 U.S.C. § 1125(c)(1). Indeed, Kangol's Marks and products have been a mainstay in United States popular culture since at least as early as the 1980s, having been popularized by celebrities such as LL Cool J, Wesley Snipes, and Samuel L. Jackson:



17. The widespread popularity and fame of the Kangol Marks has resulted in invaluable consumer goodwill associated with the Kangol brand.

18. As a result of Kangol's widespread, continuous, and exclusive use of the Kangol Marks to identify its apparel and Kangol as their source, Kangol owns valid and subsisting federal statutory and common law rights to the Kangol Marks. Moreover, many of the Kangol Marks have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

19. Kangol's Kangol Marks are distinctive to both the consuming public and Kangol's trade.

20. Kangol sells its apparel using the Kangol Marks through both brick-and-mortar stores throughout the country and online through its own website Kangol.com and other authorized dealers. Kangol has had substantial sales of its apparel under the Kangol Marks in the United States, including through its website.

21. The apparel that Kangol offers for sale under the Kangol Marks are of high-quality and craftsmanship. As a result of Kangol's expenditures and efforts, the Kangol Marks have come to signify high-quality apparel and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Kangol.

8

*Defendants' Unlawful Activities*

22. Kangol's reputation for making and selling high-quality apparel has led to frequent counterfeiting using the Kangol Marks. To date, Kangol has found many fully interactive, e-commerce stores offering Counterfeit Kangol Products on online marketplace platforms, such as AliExpress, Alibaba, DHgate, Amazon, eBay, Walmart, and Temu, including the e-commerce stores operating under the Seller Aliases.

23. Without Kangol's authorization, and upon information and belief, beginning after Kangol acquired protectable exclusive rights in its Kangol Marks, Defendants began using in commerce designations identical to Kangol's Kangol Marks in connection with apparel, including headwear (the "Counterfeit Kangol Products").

24. Kangol's investigation of the Platforms has led to the discovery that the Defendants have been offering various clothing items, including hats, on the Platforms using the Kangol Marks. Upon investigation of the Defendants' product listings for the Counterfeit Kangol Product, Kangol confirmed that the products are not authentic Kangol products. (Ex. H, Declaration of Sean McCabe, at ¶ 8, Dkt. #6.) Rather, they are counterfeit products sold using the Kangol Marks. The product listings for the Counterfeit Kangol Products bear relevant evidence that, when viewed in isolation or in combination, indicate that the products are counterfeit. For example, many of the Counterfeit Kangol Products are sold for considerably discounted prices (*e.g.*, products that Kangol sells at retail for $35–$85 being sold for less than $5), are sold in bulk (*e.g.*, volumes of up to 10,000 units), have been confirmed as products or styles that Kangol does not offer, and are being sold by foreign sellers on platforms notorious for counterfeits.

25. Online counterfeiters are known to employ many countermeasures against enforcement by intellectual property holders. For example, counterfeiters frequently operate multiple accounts to evade account shutdowns. In fact, there are many similarities amongst the various Defendants' storefronts identified in the attached Schedule A that suggest they are affiliated or part of the same counterfeiting network. As one example, the storefronts share unique wording in the product and/or company descriptions that suggests the product and/or company descriptions were authored by the same individual, despite the storefronts purporting to be different entities. Once online counterfeiters learn of any efforts by brand owners to enforce their rights, online counterfeiters will frequently shut down the online storefront being targeted only to immediately reemerge under a new name, identity, and location to resume their counterfeiting operations. This turns enforcement efforts into an ineffective game of "Whack-A-Mole."

26. Online counterfeiters are also known to maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to try to avoid payment of any monetary judgment awarded by the Court.

27. Defendants' counterfeiting and infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Kangol Products and have deceived and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' Counterfeit Kangol Products originate from, are associated with, or are otherwise authorized by Kangol.

28. The Defendants, for example, call their products "Kangol" products in their product descriptions and/or use photographs of their Counterfeit Kangol Products that have the spurious Kangol Marks affixed to them. Often, the Defendants sell their Counterfeit Kangol

Products that depict or use the Kangol Marks in bulk at prices that are far below the retail prices that Kangol charges—strong evidence that the products are counterfeit. (*See* Ex. H, Declaration of Sean McCabe, at Exhibit 2, Dkt. #6-2.)

29. Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Kangol and to its valuable reputation and goodwill with the consuming public for which Kangol has no adequate remedy at law.

## COUNT ONE
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Kangol repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

31. Defendants' unauthorized use in commerce of spurious designations that are identical or substantially indistinguishable from Kangol's Kangol Marks, on and in connection with the Counterfeit Kangol Products as alleged herein, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the Counterfeit Kangol Products, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Kangol, or that Defendants are in some way affiliated with or sponsored by Kangol. Defendants' conduct therefore constitutes counterfeiting and trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

32. Upon information and belief, Defendants have committed the foregoing acts of counterfeiting and infringement with full knowledge of Kangol's prior rights in the Kangol Marks and with the willful intent to cause confusion and trade on Kangol's goodwill.

33. The Defendants' conduct is causing immediate and irreparable harm and injury to Kangol, and to its goodwill and reputation, and will continue to both damage Kangol and confuse the public unless enjoined by this Court. Kangol has no adequate remedy at law.

34. Kangol is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, statutory damages, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Kangol repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

36. Defendants' unauthorized use in commerce of spurious designations that are identical to or substantially indistinguishable from Kangol's Kangol Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Kangol, or that Defendants are in some way affiliated with or sponsored by Kangol.

37. Defendants' unauthorized use in commerce of spurious designations that are identical to or substantially indistinguishable from Kangol's Kangol Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

38. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Kangol.

39. Defendants' conduct as alleged herein constitutes unfair competition and false designation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Kangol, and to its goodwill and reputation, and will continue to both damage Kangol and confuse the public unless enjoined by this court. Kangol has no adequate remedy at law.

## COUNT THREE
## TRADEMARK DILUTION (15 U.S.C. § 1125(c))

41. Kangol repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

42. Kangol's Kangol Marks are distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

43. Kangol's Kangol Marks became distinctive and famous before Defendants' acts as alleged herein.

44. Defendants' acts alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Kangol's famous Kangol Marks.

45. Defendants' acts alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Kangol's Kangol Marks by undermining and damaging the valuable goodwill associated therewith.

46. Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Kangol irreparable damage and will, unless enjoined, continue to so damage Kangol, which has no adequate remedy at law.

47. Kangol is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Kangol seeks judgement against Defendants as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. Using the Kangol Marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Kangol product or is not authorized by Kangol to be sold in connection with the Kangol Marks;

    b. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Kangol product or any other product produced by Kangol that is not Kangol's or not produced under the authorization, control, or supervision of Kangol and approved by Kangol for sale under the Kangol Marks;

    c. Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Kangol Products are those sold under the authorization, control, or supervision of Kangol, or are sponsored by, approved by, or otherwise connected with Kangol;

    d. Further infringing the Kangol Marks and damaging Kangol's goodwill; and

    e. Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Kangol, nor authorized by Kangol to be sold or offered for sale, and which bear any of Kangol's trademarks,

14

      including the Kangol Marks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2. Entry of an Order that, upon Kangol's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, Etsy, Temu, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Kangol Marks;

3. That Defendants account for and pay to Kangol all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Kangol Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4. In the alternative, that Kangol be awarded statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Kangol Marks;

5. That Kangol be awarded its reasonable attorneys' fees and costs; and

6. Award any and all other relief that this Court deems just and proper.

Date: March 18, 2024                    Respectfully submitted,

                                              */s/ Todd R. Tucker*
                                              Todd R. Tucker (65617)
                                              ttucker@calfee.com
                                              Yizhou Liu (93842)
                                              bliu@calfee.com
                                              Andrew W. Alexander (91167)
                                              aalexander@calfee.com
                                              Brian P. Doney (101466)
                                              bdoney@calfee.com
                                              Calfee, Halter & Griswold LLP
                                              The Calfee Building
                                              1405 East Sixth Street
                                              Cleveland, Ohio 44114
                                              (216) 622-8200 (Telephone)
                                              (216) 241-0816 (Facsimile)

                                              *Attorneys for Plaintiff Kangol LLC*