**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS (CHICAGO)**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KANGOL LLC, | ) | CASE NO. 1:24-cv-01636 |
| | ) | |
| Plaintiff, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| -vs- | ) | |
| | ) | |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Plaintiff, Kangol LLC, submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Federal Rule of Civil Procedure 55 against the Defendants, the Partnerships and Unincorporated Associations Identified on Schedule A (collectively, the "Defaulting Defendants"), based on Plaintiff's action for trademark infringement, counterfeiting, false designation of origin, and trademark dilution.

## STATEMENT OF FACTS

### Plaintiff

Plaintiff Kangol LLC ("Kangol") is a limited liability company duly organized under the laws of the State of Delaware, United States, with its principal place of business in Pennsylvania, United States, and an office located at 110 East Main Street, Adamstown, Pennsylvania 19501, United States. *First Amended Complaint*, Dkt. #24 at ¶ 7.

1

Kangol has sold a wide variety of high-quality clothing apparel and hand-made hats under the KANGOL brand since 1938. *Declaration of Sean McCabe, Exhibit H to the Complaint,* Dkt. #6, at ¶ 3. Kangol's "Bucket" and "Newsboy" style hats, both shown below, are particularly famous. *Id.*

  

Kangol has spent significant resources promoting its brand and the KANGOL trademarks, which have become a mainstay in popular culture since the 1980s and are widely known to signify Kangol's unmatched craftsmanship and quality. *Id.* at ¶ 4–5. Kangol is the owner of numerous valid and subsisting United States federal trademark registrations, including the following (collectively, "Plaintiff's Trademarks"):

| Registration Number | Trademark |
|---|---|
| 535,357; 1,011,576; 1,490,292; 3,017,272; 4,153,667; 4,384,997 | KANGOL (standard character word mark) |
| 1,372,671; 4,204,801; 4,384,996 | KANGOL |

| 2,235,981; 2,278,532 |  |
| 3,787,973 |  |

Each of Plaintiff's Trademarks are registered on the Principal Register with the United States Patent and Trademark Office for, among other things, clothing, including headwear and hats. Many of the Plaintiff's Trademarks have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. *Amended Complaint*, Exhibit G.

Kangol has used the Plaintiff's Trademarks in commerce throughout the world, including in the United States and Illinois, continuously for years in connection with the offering for sale, sale, marketing, advertising, and promotion of its apparel. In particular, Kangol offers its popular, high-quality hats through authorized brick-and-mortar retailers and its own online store at www.kangol.com, through which Kangol makes a significant portion of its sales. *Declaration of Sean McCabe, Exhibit H to the Complaint,* at ¶ 6. Additional factual assertions regarding Plaintiff in Paragraphs 16–21 of the Amended Complaint are incorporated herein. *Id.* at ¶¶ 16–21.

<u>Defaulting Defendants</u>

The Defaulting Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least one of the Seller Aliases identified on Schedule A. Exhibit A. The Defaulting Defendants, through use of e-commerce stores and their Seller Aliases, sell unauthorized or unlicensed

KANGOL branded products ("Counterfeit Products"). The Defaulting Defendants specifically target United States consumers using, at least, the Seller Aliases, offering shipping to the United States, including Illinois, accepting payments in U.S. dollars, and/or from U.S. bank accounts, and having sold Counterfeit Products of Plaintiff's federally registered trademarks to residents of Illinois. *Amended Complaint* at ¶ 9–12.

On information and belief, the Defaulting Defendants reside and/or operate in the People's Republic of China or redistribute products from the same or similar sources in those locations. *Id.* at ¶ 11. Additional factual assertions regarding the Defaulting Defendants in Paragraphs 9-12 of the Amended Complaint are incorporated herein. *Id.* at ¶ 22-28.

<u>Procedural Actions</u>

Plaintiff filed this action on February 27, 2024 (Dkt. #1) and subsequently amended the Complaint on March 18, 2024 (Dkt. #24). The Defaulting Defendants were properly served on April 18 and/or 19 by email pursuant to this Court's Order (Dkt. #31).[1] The Defaulting Defendants have failed to file an answer or otherwise respond in this action. Ex. B, *Declaration of Todd R. Tucker* (the "Tucker Declaration") at ¶ 2.

Plaintiff now moves this Court for an Order entering default and default judgment finding that the Defaulting Defendants are liable on all counts of Plaintiff's First Amended Complaint under to Federal Rule of Civil Procedure 55(a) and (b)(2). Plaintiff also seeks an award of statutory damages for willful trademark counterfeiting against the Defaulting Defendants for use of

---

[1] Among other defendants, Plaintiff served Defendants Guangzhou Unipin Sportswear Co., Ltd. (via sales@super-crown.com) and Yiwu Zhipai Trade Co., Ltd. (via 18058915901@qq.com) on April 18, 2024. However, the above two emails were bounced back on April 19, 2024. Plaintiff re-served Defendants Guangzhou Unipin Sportswear Co., Ltd. (via kevin@unipincap.com) and Yiwu Zhipai Trade Co., Ltd. (via 448904598@qq.com and 850897926@qq.com) on April 19, 2024.

counterfeit Plaintiff's Trademarks on products sold through e-commerce stores operating under the identified Seller Aliases pursuant to 15 U.S.C. § 1117(c)(2). Additionally, Plaintiff seeks an entry of a permanent injunction barring the Defaulting Defendants from selling Counterfeit Products and an order that all assets in the Defaulting Defendants' financial accounts be transferred to Plaintiff up to the amount awarded in damages.

## ARGUMENT

### I.    JURISDICTION AND VENUE ARE PROPER.

This Court has original subject matter jurisdiction over the claims in this action and venue is proper in this district under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338, 1391. This Court may exercise personal jurisdiction over the Defaulting Defendants because they each directly target their business activities toward consumers in the United States, including Illinois. *uBid, Inc. v. GoDaddy, Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010) (holding, "without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction. We take the plaintiff's asserted facts as true and resolve any factual disputes in its favor").

Each of the Defaulting Defendants operates one or more interactive commercial e-commerce stores through which Illinois residents can purchase Counterfeit Products. The Defaulting Defendants have aimed their e-commerce stores at Illinois by standing ready, willing, and able to ship their counterfeit goods to consumers in Illinois, in particular. Each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. The Defaulting Defendants have thoroughly, deliberately, and successfully exploited the Illinois market. *Id.* at

428; *See also NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 622 (7th Cir. 2022) (citing *uBid, Inc.*, 623 F.3d at 424, 428 (7th Cir. 2010)).

## II.     ENTRY OF DEFAULT IS PROPER.

On March 18, 2024, Plaintiff filed is Amended Complaint alleging: (1) trademark infringement and counterfeiting pursuant Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) trademark dilution pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Dkt. #24. The Defaulting Defendants were properly served on April 18 and/or 19. Dkt. #41. Rule 55(a) of the Federal Rules of Civil Procedure indicates that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Here, the Defaulting Defendants failed to plead or otherwise defend in the present case, and Plaintiff has demonstrated that failure by the submission of the accompanying declaration of Plaintiff's attorney. *See Tucker Declaration* at ¶ 2. Further, the Defaulting Defendants are primarily domiciled in China, and, on information and belief, are not active-duty members of the United States armed forces. *See Tucker Declaration* at ¶ 3.

## III.    DEFAULT JUDGMENT IS PROPER.

This Court is permitted to enter default judgment against the Defaulting Defendants under Federal Rule of Civil Procedure 55(b)(2). Pursuant to *U.S. v. Di Mucci*, "[a]s a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." 879 F.2d 1488 (7th Cir. 1989). Further, the "well-pleaded allegations of a complaint … are taken as true…" and the facts cannot be contested *See Id.* at 1497;

*See also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). Default judgment is appropriate in the present case because, as indicated above, the Defaulting Defendants were properly served on August 18 and/or 19, 2024; the Defaulting Defendants have filed a responsive pleading or otherwise appeared in this case in opposition; and the deadline for any such pleading or response has expired pursuant to Federal Rule of Civil Procedure 12(a)(1)(A).

As discussed hereinabove, Plaintiff requests an award of statutory damages for willful trademark counterfeiting against the Defaulting Defendants for use of counterfeit Plaintiff's Trademarks on products sold through e-commerce store operating under the identified Seller Aliases pursuant to 15 U.S.C. § 1117(c)(2). Additionally, Plaintiff requests an entry of a permanent injunction prohibiting the Defaulting Defendants from selling Counterfeit Products and an order that all assets in the Defaulting Defendants' financial accounts be transferred to Plaintiff up to the amount awarded in damages.

### A. The Defaulting Defendants have committed trademark infringement and counterfeiting pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

In its Amended Complaint, Plaintiff alleged that the Defaulting Defendants have committed trademark infringement and counterfeiting pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114. *Amended Complaint* at ¶ 30–34. To prevail on a claim for trademark infringement and counterfeiting, a plaintiff "must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion amongst consumers." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001) (citing *Eli Lilly*, 233 F.3d 456, 461 (7th Cir. 2000)).

Regarding Point (1), in its Amended Complaint, Plaintiff alleged that it owns numerous valid and subsisting United States federal trademark registrations. *Amended Complaint* at ¶ 13. The Plaintiff's Trademarks are registered on the principal register of the United States Patent and Trademark Office in connection with clothing including headwear. *See Id.* at ¶ 14. The existence of Plaintiff's Trademarks being registered on the principal register of the United States Patent and Trademark Office is *prima facie* evidence of the Plaintiff's Trademarks' protectable nature.

Regarding Point (2), Plaintiff's registered ownership of Plaintiff's Trademarks provides the legal presumption that Plaintiff has the exclusive right to use the trademarks. Plaintiff alleged in its Amended Complaint that the Defaulting Defendants have used the Plaintiff's Trademarks on and in connection with Counterfeit Products branded with the Plaintiff's Trademarks. *Id.* at ¶ 31. Plaintiff provided evidence concerning the Defaulting Defendants' use of the Plaintiff's Trademarks in the Amended Complaint and the Declaration of Sean McCabe. *Amended Complaint* at ¶ 22-29; *Declaration of Sean McCabe, Exhibit H to the Complaint,* Dkt. #6, at ¶ 8, Exhibit 2.

The Defaulting Defendant's unauthorized and unlicensed use in commerce of spurious designations that are identical or substantially indistinguishable from Plaintiff's Trademarks on or in connection with Counterfeit Products is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and is likely to cause consumers to be confused or to believe, contrary to fact, that the Defaulting Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that the Defaulting Defendants are in some way affiliated with Plaintiff.

As discussed herein, because the Defaulting Defendants have failed to plead or otherwise respond in the present case prior to the expiration of the deadline pursuant to Federal Rule of Civil

Procedure 12(a)(1)(A), the Court must take the well-pleaded allegations set forth in the Amended Complaint as true. *See U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) *See also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *See* Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff respectfully requests entry of default judgment with respect to Count I of the Amended Complaint for willful trademark infringement and counterfeiting of Plaintiff's Trademarks.

**B.    The Defaulting Defendants have engaged in activities which constitute false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).**

In its Amended Complaint, Plaintiff alleged that the Defaulting Defendants have committed false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Amended Complaint* at ¶ 35–40. Pursuant to § 1125(a), Plaintiff must demonstrate that the Defaulting Defendants used Plaintiff's Trademarks on or in connection with any goods or services in such a manner that is likely to cause confusion as to the origin, sponsorship, or approval of the Defaulting Defendants' goods. Plaintiff respectfully incorporates herein by reference the arguments presented in Subsection III(A), namely, the Defaulting Defendants' have indeed used Plaintiff's Trademarks on or in connection with goods for which Plaintiff holds valid and subsisting federal trademark rights for, and such use is likely to cause confusion as to the origin, source, sponsorship or affiliation of the Counterfeit Products to Plaintiff, and is likely to cause consumers to be confused or to believe, contrary to fact, that the Defaulting Defendants' goods are sold, authorized, endorsed or sponsored by Plaintiff, or that the Defaulting Defendants are in some way affiliated with Plaintiff.

As discussed herein, because the Defaulting Defendants have failed to plead or otherwise respond in the present case prior to the expiration of the deadline pursuant to Federal Rule of Civil

Procedure 12(a)(1)(A), the Court must take the well-pleaded allegations set forth in the Amended Complaint as true. *See U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) *See also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *See* Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff respectfully requests entry of default judgment with respect to Count II of the Amended Complaint for false designation of origin of Plaintiff's Trademarks.

C.     **The Defaulting Defendants have engaged in activities that qualify as trademark dilution pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).**

In its Amended Complaint, Plaintiff alleged that the Defaulting Defendants have committed trademark dilution within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). *Amended Complaint* at ¶ 41–47. To prevail on a claim for trademark dilution, a plaintiff must establish that it owns a famous mark, and that the defendant's actions constituted use of the mark in commerce and that it is likely to cause dilution by blurring or dilution by tarnishment, <u>regardless</u> of the presence or absence of actual confusion, or even likely confusion. *See* 15 U.S.C. § 1125(c)(2)(A). Plaintiff alleged in its Amended Complaint that it is the owner of several famous marks. *See* Amended Complaint at ¶ 42.

Regarding dilution by blurring, a court may consider the following relevant factors (1) the degree of similarity between the mark as-used by the defendant and the famous mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the mark or trade name intended to create an association with the famous mark; and (6) any actual association between the mark or trade name and the famous mark. *See* 15 U.S.C. § 1125(2)(B).

Regarding Point 1, as alleged in its Amended Complaint, the Defaulting Defendants have copied Plaintiff's mark, thus the marks are not only similar, but identical. *Amended Complaint* at ¶ 19, 23. Regarding Point 2, Plaintiff's marks are inherently distinctive. *Id*. at ¶ 43. Regarding Point 3, Plaintiff has exclusive ownership rights in Plaintiff's Trademarks worldwide. *Id.* at ¶ 15. Regarding Point 4, Plaintiff has spent considerable time and resources in supporting and advancing Plaintiff's Trademarks, such that they are easily recognized – as evidenced by the fact that Plaintiff's Trademarks have been further popularized by celebrities through wear of Plaintiff's genuine products. *Id*. at ¶ 16. Regarding Point 5, the Defaulting Defendants have clearly attempted to associate Plaintiff's Trademarks with their products. *Amended Complaint* at ¶ 23–24, 28. Regarding Point 6, the Defaulting Defendants' actions have caused an actual association between their use of the Plaintiff's Trademarks and Plaintiff's Trademarks. Accordingly, Plaintiff has adequately alleged that the Defaulting Defendants' actions constitute dilution by blurring.

Dilution by tarnishment is "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *See* 15 U.S.C. § 1125(c)(2)(C). In its Amended Complaint, Plaintiff alleged that the Defaulting Defendants' actions constituted dilution by tarnishment because the Defaulting Defendants' actions are likely to undermine and damage the valuable goodwill Plaintiff has built concerning the Plaintiff's Trademarks.

As discussed herein, because the Defaulting Defendants have failed to plead or otherwise respond in the present case prior to the expiration of the deadline pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), the Court must take the well-pleaded allegations set forth in the Amended Complaint as true. *See U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); *See also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *See* Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff

11

respectfully requests entry of default judgment with respect to Count III of the Amended Complaint for dilution of Plaintiff's Trademarks.

## IV. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD.

### A. An award of statutory damages is appropriate in this case.

The Lanham Act permits statutory damages for trademark counterfeiting. 15 U.S.C. § 1117. As demonstrated by Plaintiff, the Defaulting Defendants have used a "counterfeit mark" within the meaning of 15 U.S.C. § 1116(d)(1)(b), namely, the Defaulting Defendants have used at least one mark "that is registered on the principal register in the United States Patent and Trademark Office for such goods … sold, offered for sale, or distributed" and the at least one mark is in current use by Plaintiff. 15 U.S.C. § 1116(d)(1)(b)(i). The Defaulting Defendants have "produced counterfeit goods in an attempt to capitalize on the popularity" of Plaintiff's products, and the products were produced by an entity that was not authorized or licensed to use Plaintiff's Trademarks. *See Entertainment One UK Ltd. v. 2012Shiliang*, 384 F.Supp.3d 941, 949 (N.D. Ill. May 2, 2019).

Statutory damages for counterfeiting were specifically designed as a remedy for the particular problem Plaintiff faces. Specifically, where a plaintiff may be unable to "determine the scope of, or be able to prove, actual damages" because defendant counterfeiters may "hide, alter or destroy records", a plaintiff is still provided with a remedy. *See Lorillard Tobacco Co. v. S & M Cent. Service Corp.*, 2004 WL 2534378 (N.D. Ill. Nov. 8, 2004). Here, because the Defaulting Defendants have failed to answer in this case and due to lack of financial information concerning the extent of Defaulting Defendants' sales associated with the counterfeit marks, statutory damages are particularly appropriate.

**B.      An award of statutory damages is warranted in this case.**

While there is no rigid formula for calculating statutory damages, statutory damages are designed to be remedial in nature and protect an important public interest. *See Chi Boy Music v. Charlie Club*, 930 F.2d 1229 (7ᵗʰ Cir. 1991); *See also Sands, Taylor & Wood v. The Quaker Oats Co.*, 34 F.3d 1340, 1348 (7ᵗʰ Cir. 1994). When a counterfeit mark is used

> "in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect … to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, *as the court orders just*; or (2) if the court finds that the use of the counterfeit mark was **willful**, not more than $2,000,000 per counterfeit mark per type of gods or services sold, offered for sale, or *distributed as the court considers just*."

15 U.S.C. § 1117(c) (emphasis added).

This Court has discretion in determining the amount of statutory damages appropriate in the present case. *See*, *Id*.; *See also Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2015 WL 3818622 (N.D. Ill. June 18, 2015) (holding, "[t]hough § 1117(c) places a dollar range on possible statutory damages awards, the statute provides no guidance on how to select a figure in that range… Accordingly, '[c]ourts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c).'"). The Seventh Circuit's application of statutory damages under 17 U.S.C. § 504(c) is discussed in *Chi-Boy Music v. Charlie Club, Inc*., 930 F.2d 1224 (7ᵗʰ Cir. 1991). The Seventh Circuit considers various factors, including, "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *See Id*. at 1229 (citing

*F.E.L. Publications v. Catholic Bishop of Chicago*, 754 F.2d 216, 219 (7th Cir.)). Moreover, where infringing conduct is considered "willful," the statutory damages award "may be designed to penalize the infringer and to deter future violations." *See Id*. at 1230. Accordingly, Plaintiff respectfully requests entry of an award of $50,000 against each of the Defaulting Defendants for willful use of a counterfeit mark.

i. **The Defaulting Defendants' conduct constitutes willful counterfeiting of Plaintiff's Trademarks and therefore supports the requested award.**

Willful counterfeiting occurs when an accused infringer "had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights. Thus, knowledge need not be proved directly, but can be inferred from a defendant's conduct." *Lorillard Tobacco Co. v. S & M Cent. Service Corp.*, 2004 WL 2534378 (N.D. Ill. Nov. 8, 2004) (citing *Microsoft Corp. v. Logical Choice Computers, Inc.*, 2001 WL 58950 (N.D. Ill. Jan. 22, 2001)).

As alleged in its Amended Complaint, the Defaulting Defendants' conduct constitutes willful counterfeiting. *Amended Complaint* at ¶ 32. The Defaulting Defendants have, without Plaintiff's authorization, used in commerce marks identical to Plaintiff's Trademarks in connection with goods Plaintiff offers for sale. *Id*. at ¶ 23. The Defaulting Defendants have used e-commerce platforms to market these Counterfeit Products to unsuspecting consumers. *Id*. at ¶ 24. Unsuspecting consumers, when viewing the Defaulting Defendants' e-commerce platforms could easily be led to believe (and Defaulting Defendants' likely intended the same) that the Counterfeit Products offered by the Defaulting Defendants are genuine products bearing Plaintiff's Trademarks. Regardless of whether the Defaulting Defendants acted *knowingly*, the Defaulting Defendants have, at the very least, acted with a reckless disregard for Plaintiff's rights in the Plaintiff's Trademarks through, at least, the actions discussed in the Amended Complaint at ¶ 28.

14

Moreover, in cases of default by defendants, District Courts have found that defendants' actions constitute willful infringement. *See*, *Deckers Outdoor Corp. v. Does 1-55*, 2011 WL 4929036 (N.D. Ill. Oct. 14, 2011) (citing *The Gen. Council of the Assemblies of God v. The Ranger Supply Store, Inc. et al.*, No. 10 C 07050 (N.D. Ill. June 29, 2011) ("entering default judgment against defendants who sold counterfeit products to Illinois residents through an internet website."). Therefore, the Defaulting Defendants have committed willful counterfeiting within the means of 15 U.S.C. § 1117(c), and thus, Plaintiff is entitled to statutory damages for said willful counterfeiting.

ii.     **The Plaintiff's requested award is reasonable.**

Plaintiff further respectfully submits that the requested $50,000 per Defaulting Defendant is reasonable and appropriate given the circumstances.

a.     **Plaintiff has spent considerable time, money, and resources building goodwill in Plaintiff's Trademarks through marketing, advertising, and promoting its apparel sold under Plaintiff's Trademarks.**

This Honorable Court is permitted to consider the value of the brand and the efforts taken to promote it. *See Lorillard Tobacco Co. v. S & M Cent. Service Corp.*, 2004 WL 2534378 at *6 (N.D. Ill. Nov. 8, 2004). Plaintiff has invested significant resources in achieving widespread recognition and fame of the Plaintiff's Trademarks. *Amended Complaint* at ¶ 16. This promotion has led to Plaintiff's Trademarks becoming famous in the marketplace in connection with the relevant goods. Accordingly, the value of Plaintiff's brand and the efforts taken to promote the brand should be viewed favorably when determining the statutory damages award.

       b.     **The Defaulting Defendants' use of e-commerce platforms constitutes widespread exposure over the internet, thus meriting Plaintiff's requested statutory damages award.**

Where defendants engaged in widespread Internet sales and advertising through e-commerce platforms, statutory damages are proper. The Defaulting Defendants have engaged in widespread Internet through e-commerce platforms. *Amended Complaint* at ¶ 22. Therefore, awarding statutory damages is proper. *See Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2015 WL 3818622 (N.D. Ill. June 18, 2015) (awarding statutory damages in the amount of $50,000 per mark, for a total award of $150,000 noting that "Defendant's counterfeiting took place on the Internet, enabling Defendant to reach a 'vast customer base'" at *3); *See also Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*, 2010 WL 199906 (S.D.N.Y. Jan. 19, 2010) (awarding $100,000 per mark per types of goods sold noting, "[a] large award is also necessary because the Settlement Agreement failed to deter Defendant and because of Defendant's ability to reach a vast customer base through internet advertising." at *10); *Deckers Outdoor Corp. v. Does 1-55*, 2011 WL 4929036 (N.D. Ill. Oct. 14, 2011) (awarding $750,000 per mark where defendants engaged in establishing and maintaining fully interactive commercial Internet websites).

       c.     **The statutory damages award must be sufficient to deter the Defaulting Defendants, and others similarly situated, from repeating the same behavior.**

The rapid growth of Internet sales and e-commerce platforms has facilitated online trafficking in counterfeit goods. In 2021 alone, Customs and Border Protection seized over $3.3 billion in illegitimate goods. Apparel, like Plaintiff's genuine goods, is the most counterfeited type of good. Counterfeiters use e-commerce platforms to sell their counterfeit products to a large

number of potential consumers due to the vast reach of the Internet with near impunity. Counterfeiters are able to register their deceptive storefronts on e-commerce stores, such as the third party platforms used by the Defaulting Defendants, without providing accurate and genuine identifying information, or any permission or authorization to sell legitimate products. *Amended Complaint* at ¶ 3–4. As a result, United States consumers now face a significant risk of purchasing counterfeit goods over the Internet, that they believe are genuine products. *See Id*. at ¶ 4. To ensure that the Defaulting Defendants discontinue their counterfeiting behavior and Internet sales through e-commerce platforms, generally, Plaintiff respectfully submits that the statutory damages award must be sufficient to deter this repetitive behavior.

As mentioned hereinabove, the Seventh Circuit's application of statutory damages under 17 U.S.C. § 504(c) is discussed in *Chi-Boy*, where various factors including "the efficacy of the damages as a deterrent to future copyright infringement" is addressed. 930 F.2d 1224 (7th Cir. 1991). The Defaulting Defendants must be discouraged from returning to their former ways and polluting the marketplace with Counterfeit Products once again. *See Sands, Taylor & Wood* v. *Quaker Oats Co.*, 34 F.3d 1340 (7th Cir. 1994). Accordingly, Plaintiff respectfully submits that the statutory damages award requested will deter and discourage the Defaulting Defendants and others from engaging in counterfeiting.

## V.   PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

In addition to statutory damages, Plaintiff respectfully requests entry of a permanent injunction against the Defaulting Defendants, prohibiting the Defaulting Defendants from infringing or otherwise violating Plaintiff's trademark rights and damaging Plaintiff's goodwill. Plaintiff respectfully requests that the permanent injunction include all the injunctive relief

previously provided by this Court to Plaintiff in the Temporary Restraining Order. Pursuant to *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), to obtain injunctive relief, Plaintiff must establish that: "(1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

As Plaintiff demonstrated in its Motion for Temporary Restraining Order [10], and as determined by this Honorable Court when ordering the Temporary Restraining Order [34], Plaintiff has previously established each of these factors. In particular, Plaintiff respectfully submits that it is entitled to injunctive relief so that it may enforce its rights against any new e-commerce stores shown to be operated by the Defaulting Defendants selling Counterfeit Products.

<u>**CONCLUSION**</u>

Plaintiff respectfully requests that the Court enter default and default judgment against the Defaulting Defendants, award statutory damages in the amount of $50,000 pursuant to 15 U.S.C. § 1117(c) and enter a permanent injunction order prohibiting the Defaulting Defendants from selling Counterfeit Products and transferring all assets in the Defaulting Defendants' financial accounts to Plaintiff.

Dated this 17 day of May 2024.                    Respectfully submitted,

<u>/s/ Todd R. Tucker</u>
Todd R. Tucker (65617)
ttucker@calfee.com
Yizhou Liu (93842)
bliu@calfee.com
Andrew W. Alexander (91167)
aalexander@calfee.com

Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
(216) 622-8200 (Telephone)
(216) 241-0816 (Facsimile)

*Attorneys for Plaintiff Kangol LLC*