UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kangol LLC, | ) |
|     Plaintiff, | ) <br> ) <br> )   Case No. 24-CV-01636 |
| v. | ) |
| The Partnerships and Unincorporated Associations Identified on Schedule A, | )   Judge Sharon Johnson Coleman <br> ) <br> ) <br> ) |
|     Defendants. | ) <br> ) |

**REPLY IN SUPPORT OF MOTION TO VACATE JUDGEMENT IN WHOLE OR IN PART PURSUANT TO RULE 60(B)(4) OR IN THE ALTERNATIVE, FOR FAILURE TO COMPLY WITH RULE 69(A)(1) AND FOR OTHER RELIEF**

Defendant No. 14, Hangzhou Chuanyue Silk Import & Export Co., Ltd., for its Reply in support of its Motion to Vacate Judgement in Whole or in Part Pursuant to Rule 60(b)(4) or in the Alternative, for Plaintiff's Failure to Comply with Rule 69(a)(1) and for Other Relief, states as follows.

Plaintiff's ***Response*** [Dkt#63] to Hangzhou Chuanyue Silk Import & Export Co., Ltd.'s ("***Hangzhou Chuanyue***") Motion to Vacate [DKT#60] fails to provide substantial reasons to deny the Motion to Vacate, focusing instead on irrelevancies or misunderstood statements of the law.

In support of this Reply, Hangzhou Chuanyue submits the excerpted pages submitted by Plaintiff related to Hangzhou Chuanyue as **Exhibit A**, Hangzhou Chuanyue's Amazon page showing its address as **Exhibit B**, and the declaration of Hangzhou Chuanyue manager Shenghong Xu as **Exhibit C.**

I. **Timeliness of the Motion, Previous Counsel and Knowledge of the Lawsuit are not relevant to this Motion.**

Despite relying heavily on *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 328 (N.D. Ill. 2024), Plaintiff ignores the "Standard of Review" section of Peanuts, which reads:

> Because a court lacks personal jurisdiction over a party who was not adequately served with process, any judgment against such a party is automatically void… Further, it is irrelevant whether the defendant took "quick action" to remedy the default since motions under Rule 60(b)(4) have "no time limit, at least absent exceptional circumstances.".
>
> *Peanuts* at 322-23 (citations omitted).

While Hangzhou Chuanyue respectfully disagrees with the ultimate holding in *Peanuts* for the reasons outlined in the Motion to Vacate, the *Peanuts* court correctly outlined the applicable standard of review where a Schedule A Defendant seeks relief under Rule 60(b)(4). Indeed, Hangzhou Chuanyue cited this passage in its Motion to Vacate, pp. 2-3.

The other cases cited by Plaintiff also show that Plaintiff has failed to appreciate the distinction between Rule 60(b)(4) motions and other Rule 60(b) motions. In *Wehrs v. Wells*, 688 F.3d 886 (7th Cir. 2012), Response, p. 4, the defendant seeking relief did not claim that the default judgment was void or that defendant had not been properly served. Neither did the defendants in *United States SEC v. Benger*, No. 09 C 676, 2014 U.S. Dist. LEXIS 71718 (N.D. Ill. May

2

27, 2014) (Response p. 2), *Cracco v. Vitran Express, Inc.*, 559 F.3d 625 (7th Cir. 2009) (Response p. 4), *Tygris Asset Finance, Inc. v. Szollas*, No. 09 C 4488, 2010 U.S. Dist. LEXIS 56491 (N.D. Ill. June 7, 2010) (Response p. 4) or in *Casio Computer Co. v. Noren*, 35 F. App'x 247 (7th Cir. 2002) (Response p. 2). *None* of those cases were related to Rule 60(b)(4), service of process, the Hague Service Convention, or any other claim that the judgment was void.

Based on *Peanuts, i*t does not matter that Plaintiff complains that Hangzhou Chuanyue took too long to file its Motion to Vacate. Similarly, it does not matter that previous counsel may have attempted to settle the matter. Plaintiff does not claim that Hangzhou Chuanyue waived service of process (or any other defense), either implicitly or explicitly through any of those attorneys who may have unsuccessfully discussed settlement.

A related misconception on Plaintiff's part is that "actual knowledge" of the lawsuit is a substitute for service of process under Rule 4(f). Indeed, the "actual knowledge" standard claimed by Plaintiff (see Response pp. 6, 7, 10 n.5), would in effect allow service to be by any means whatsoever, so long as a plaintiff could claim "actual knowledge". That is not, of course, the standard required by Rule 4. Plaintiff cites the Supreme Court, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), for the contention that the goal of service is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Id.* at 314. The full quote is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be

accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. The Supreme Court there ruled that a notice meeting the standards of being reasonably calculated to apprise parties of the pendency of an action is *an* elementary fundamental standard of due process. It is a necessary element, but not a sufficient one. The standard of Due Process before this Court is Rule 4(f) and the Hague Service Convention, which delineate the other required elements of service of process with respect to Due Process. The Seventh Circuit has long recognized that "valid service of process is necessary in order to assert personal jurisdiction over a defendant. Moreover, it is well recognized that a defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements." *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (internal citations omitted).

## II. Hangzhou Chuanyue's Address is Known

### a. Plaintiff evidently never searched for Chuanyue's address

Hangzhou Chuanyue's address is known, easily obtainable, and the same address listed in its Federal Trademark Registration. In support, Hangzhou Chuanyue submits the declaration of Shenghong Xu, Exhibit C. The declaration is not submitted to supply any new information about Hangzhou Chuanyue's address, but to show that it was available at the time Plaintiff filed this lawsuit.

In another case that Plaintiff relies on, *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 798 (N.D.

4

Ill., 2021), the court noted that "[b]efore courts will accept that a defendant's address is 'not known,' the plaintiff must make reasonably diligent efforts to ascertain and verify defendant's mailing address." Like *Peanuts* discussed above, *NBA* reached a conclusion with which Hangzhou Chuanyue respectfully disagrees[1], but it correctly framed the legal issues relevant to a service of Process, and, as in *Peanuts*, Plaintiff failed to consider the implications of the case it cited.

The court in *NBA* framed the efforts of the plaintiff in that case and the resulting legal conclusions as follows:

> Plaintiffs did not undertake reasonably diligent efforts to ascertain Defendant's mailing address. Defendant uploaded its true and correct address to Amazon.com and in fact, Plaintiffs' own submission of "alleged infringing evidence" included Defendant's business information…
>
> Plaintiffs' bare assertions regarding the reliability of Defendant's publicly available address are not a substitute for actual diligence. Plaintiffs do not claim that they conducted any diligence to verify the address Defendant posted on Amazon. Plaintiffs do not even claim that they found that address before it asked the Court to allow for alternative means of service. Plaintiffs therefore did not conduct the type of diligence courts have found sufficient to hold that a defendant's address was "not known" for the purpose of the [Hague] Convention.

---

[1] That email service is allowed under the Hague Service Convention where Defendants reside in China.

*NBA at* 796 (Docket references omitted).

The only notable difference between the information available to Plaintiff in this case and the plaintiff in *NBA* is that in that case, the "Plaintiffs' own submission of 'alleged infringing evidence' included Defendant's business information", whereas in the present case Plaintiff simply did not bother to look for and upload the relevant information which would have shown the address.

Plaintiff claims that "Defendant's Alibaba listing did not include an address". While it is true that the address is not directly mentioned on the particular four pages submitted by Plaintiff, the address was two clicks away. "[R]easonable diligence generally requires that the plaintiff 'ha[ve] attempted to obtain [the defendant's] address in a variety of ways." *Peanuts,* 347 F.R.D. at 327-28. One attempt Plaintiff could have made, had it been diligent, would be to follow the link on the first submitted screenshot, "Hangzhou Chuanyue Silk Import and Export Co., Ltd", just below the words "No reviews yet". That link would have led to Hangzhou Chuanyue's home page on Alibaba, which in turn offers a "Contacts" link, which leads directly to an address: "No. 252-256[2], China Silk City, Hangzhou, Located On The West Side Of Xinhua Road, Health Road And Other Silk Themed Blocks, Hangzhou, Zhejiang, China". See Exhibit C¶16,C-2.

---

[2] The explanation for difference between "252-257" (discussed below) and "252-256" in the addresses of Hangzhou Chuanyue, See Exhibit C, ¶5.

While Plaintiff *claims* it "made reasonably diligent efforts" that conclusory claim is belied not only by its failure to click through the links on the webpages it submitted as evidence, but also by the absence of any description of any effort made by Plaintiff. There are no facts, not a single statement, sworn or unsworn, neither in its Response, nor any previous filing in this matter, that demonstrate that Plaintiff made any actual effort to determine the address of Hangzhou Chuanyue before asking the Court to allow it to serve process by email. Indeed, Plaintiff's Response underlines that, like the plaintiff in *NBA,* it did not make *any* effort to ascertain Hangzhou Chuanyue's address prior to requesting that this Court grant its motion to service process by email in its motion for TRO. That by itself is a sufficient basis to grant the Motion to Vacate.

### b. Plaintiff could have found the address, had it looked.

Instead of diligently making the required variety of attempts to determine the address of Hangzhou Chuanyue, Plaintiff expects this Court to believe that it would have been futile anyway. This notion is deliberately obtuse or reveals that Plaintiff has not, even now, employed reasonably diligent efforts to determine Hangzhou Chuanyue's address.

Plaintiff first complains that it would have been too much trouble to look up all the "other words that may have been registered trademarks" on the four pages of screenshot evidence, excerpted as **Exhibit A,** that it submitted to this Court because it was so busy suing other defendants. Response, p. 6. Nothing in

7

*Peanuts, NBA,* or common sense provides a "we were too busy" exception to the requirement for reasonable diligence.

Even taken seriously, that excuse makes no sense in light of the pages on Exhibit A themselves. What "other words that may have been registered trademarks" could Plaintiff be referring to? Besides the name of the company, no words on the pages look much like a trademark. Even if there were a few words which could be construed as trademarks, a reasonably diligent attorney could have simply looked them up in a few minutes on the USPTO's trademark search engine. (https://tmsearch.uspto.gov/). That search engine would have also allowed a diligent attorney to look up "Hangzhou Chuanyue Silk Import and Export Co.", which would have led directly to the DANA XU trademark and its registered address (which address was accurate as discussed below).

Of course, the DANA XU trademark is explicitly mentioned by Hangzhou Chuanyue on the screenshots submitted by Plaintiff, Exhibit A: "We have our registere[d] trademark 'DANA XU' brand in North America as well". Assuming Plaintiff's attorneys reviewed this document prior to filing it, they would have been aware that Hangzhou Chuanyue claimed DANA XU (and only DANA XU) as a federally registered trademark on Exhibit A. As trademark attorneys, Plaintiff's counsel would have known that there was an address associated with that registration. Plaintiff therefore has no excuse for being unaware of the address.

Next, Plaintiff complains that it found multiple addresses for Hangzhou Chuanyue. Actually, it found different expressions of the same address, and one old address from a third-party website a few doors down from the other addresses.

The address from the USPTO:

> No. 252-257, Hangzhou China Silk City, Xiacheng District, Hangzhou, Zhejiang, China 310000

and the address on the website https://www.danasilk.com/:

> No. 217# Xinhua Road, Xicheng District, Hangzhou City, Zhejiang Province, China

are alternative addresses for the same location, just as "219 S Dearborn St", "Dirksen Federal Building" and "Everett McKinley Dirksen United States Courthouse" all refer to the same location.

Hangzhou China Silk City is an open-air mall with permanent store fronts with posted addresses. Exhibit C ¶¶10-12. One of its general addresses, as shown on Plaintiff's preferred map site, Bing Maps, is No. 217 Xinhua Road. Exhibit C ¶ 9. At that location, "252-257, Hangzhou China Silk City" is the address of Hangzhou Chuanyue within Hangzhou China Silk City. See Exhibit C ¶6. Either address would be sufficient to locate Hangzhou Chuanyue.

Public records, an example of which was available on the danasilk.com website, also show a consistent address "No. 252-256, Hangzhou China Silk Town, within the Health Road Silk Characteristic Street, West Side of Xinhua

9

Road, Gongshu District, Hangzhou City, Zhejiang Province." See Exhibit C¶¶18-19, C-4.

Additionally, Plaintiff could also have easily looked up "Hangzhou Chuanyue Silk Import and Export Co." on Amazon.com, where both addresses would have been available. See Exhibit B**.** Those addresses were available as of the time of filing the lawsuit. Exhibit C ¶17, Exhibit C-3.

Plaintiff further complains that a third-party website lists Hangzhou Chuanyue's address as "xinhua road 238". An inaccurate third-party website doesn't render Hangzhou Chuanyue's address as "elusive and uncertain". Instead, it shows an address which, one ought to infer, is very close to 217 Xinxue, especially since the listing states that the company is located "located in Hang Zhou, Chinese Silk City". As commonly occurs, the company moved, and a third-party listing did not get updated. See Exhibit C ¶13.

 Moreover, Plaintiff should also have been aware that Hangzhou Chuanyue has a permanent store front, as that storefront is depicted on the website https://www.danasilk.com/. See Exhibit C ¶6, C-2.

Plaintiff also suggests that this Court infer that Hangzhou Chuanyue is entirely disingenuous because the company is sometimes listed as "Hangzhou Chuanyue Silk Imp & Exp Co., Ltd." and other times "Hangzhou Chuanyue Silk Imp*ort* & Exp*ort* Co., Ltd." Besides being an extremely common contraction, the company is a Chinese company, and the name is an anglicized version of the

10

company's Chinese name, and as it turns out, you cannot make the same contraction in Chinese. See Exhibit C.

Plaintiff then claims that the address is unknown because, based on the testimony of Plaintiff's lead counsel, the use of "conflicting addresses" is consistent with a strategy employed by counterfeiters. First, there is no reason why Plaintiff's lead counsel should be allowed to offer his expert opinion on this or any other matter. Second, as shown above, the addresses don't conflict. Third, Plaintiff once again ignores a case that it relies on. One address on a web page was sufficient to establish that Defendant has *at least one* "known" address such that the Hague Service Convention applies. *Peanuts* 347 F.R.D. at 328 (N.D. Ill. 2024) (emphasis supplied). Thus, under *Peanuts,* multiple addresses do not render an address unknown.

### III. Electronic Service is Not Proper

In the next section of the Response, Plaintiff goes through many of the cases in the Northern District which found that the email service upon which Schedule A cases depend is not prohibited either because the methods in the Hague Service Convention are not exclusive, or because email is not "postal". Those cases and the flaws in their reasoning were previously addressed in the Motion to Vacate and need not be repeated.

But Plaintiff does not address the bulk of Hangzhou Chuanyue's argument: that those majority view cases erred by failing to consider the method of analysis employed by the Supreme Court in *Water Splash, Inc. v. Menon, 581 U.S. 271*

11

(2017), a case which construed not only the Hague Service Convention but also the very paragraphs of that treaty at issue in this case.

Treaties such as the Hague Service Convention are, like Federal Statutes, the "supreme Law of the Land". (*USCS Const. Art. VI, Cl 2*). In accordance with *Water Splash*, this Court must construe the treaty liberally, considering both text and context of the treaty, *Water Splash* at 276, consider the Convention's drafting history, the views of the Executive Branch of the United States, and the views of other signatories, *Id.* at 280 and read it "in a manner consistent with the *shared* expectations of the contracting parties". *Id.* at 282.

Based on that mandate and the numerous exhibits submitted with the motion, none of which were addressed by Plaintiff, this Court should find that the Hague Service Convention does not allow service by email.

## IV. Article 15

Plaintiff addresses Article 15 of the Convention first to claim that the Supreme Court in *Volkswagenwerk Aktiengesellschaft v. Schlunk* "found that Article 15 and 16 of the Convention implicitly prohibited *only* 'notification *au parquet*.'" The placement of the word "only" is highly misleading. The *Schlunk* court did not consider whether other methods of service such as email are also prohibited under the Convention. If Article 15 was meant to only apply to one particular type of service, it would have said so.

12

Plaintiff also cites *Peanuts* to counter Hangzhou Chuanyue's Article 15 argument, although that court dismissed the defendant's Article 15 arguments as being waived for failure to raise them until the reply brief. 347 F.R.D. at 332.

Two other cases cited by Plaintiff related to Article 15 are inapplicable. In both *Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005) and *Lonati v. Soxnet, Inc.*, 2021 U.S. Dist. LEXIS 263356 (C.D. Cal. Sep. 20, 2021), the Plaintiffs *complied* with the Hague Service Convention by serving defendants through the Central Authority established in defendant's country of residence. *See Viertel* at 300, *Lonati* at *5.

**V.    Rule 69**

Plaintiff mistakes simplicity for lack of development. It is axiomatic that "judges may undoubtedly order third parties to deliver assets to satisfy a judgment" as Plaintiff states. But Hangzhou Chuanyue's objection is that Rule 69 requires that Illinois' *procedures* must be followed. The cases cited by Plaintiff, and even the quotes used by Plaintiff, show that those procedures were not followed.

Plaintiff's case *Star Insurance Co. v. Risk Marketing Group Inc.*, 561 F.3d 656, 661-662 (7th Cir. 2009) notes that "the Illinois citation statute, 735 ILCS 5/2-1402, supplies the *procedure* for executing a federal-court judgment". (emphasis supplied.) Plaintiff's case *Carpenters Fringe Benefit Funds of Ill. v. Royal Builders*, 2008 U.S. Dist. LEXIS 94115, at *4-5 (N.D. Ill. June 6, 2008) provides that "[u]nder Illinois law, 735 ILL. COMP. STAT. § 5/2-1402(b)(3),

13

courts are empowered to compel a third party indebted to the judgment debtor to deliver up assets discovered *pursuant to a citation* if those assets are held under circumstances in which the judgment debtor could recover them in an appropriate action." *Id.* at *4-5 (emphasis supplied).

What Plaintiff fails to recognize is that Illinois post judgment procedure is structured around post judgment supplemental proceedings commenced by citations to discover assets, not self-executing default orders. Plaintiff correctly cites 735 ILCS 5/2-1402 which describes in detail the form and procedures used for citation in Illinois. In accordance with 735 ILCS 5/2-1402 (a), "A citation proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting citation proceedings shall be prescribed by rules." The "rules" refer to the Illinois Supreme Court rules, specifically Ill. Sup. Ct., R 277, which governs post judgment supplementary proceedings. "In Illinois, the pertinent rule is Ill.Sup.Ct. R. 277(a), which allows a party to commence a supplementary proceeding with respect to a judgment which is subject to enforcement … against the judgment debtor *or any third party* the judgment creditor believes has property of or is indebted to *the judgment debtor*." (Emphasis supplied [by court]). *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 40369, at *4-5 (N.D. Ill. Apr. 30, 2008) (internal citation and quotes omitted). Ill. Sup. Ct R. 277 (b) mandates that "supplementary proceeding shall be commenced by the service of a citation

14

on the party against whom it is brought. The clerk shall issue a citation upon oral request."

There are of course many more Illinois procedural rules to be found in 735 ILCS 5/2-1402, Ill. Sup. Ct., R 277, and relevant case law. But greater detail is not needed as Plaintiff did not take even one step down the road of following Illinois' procedures. Hangzhou Chuanyue's "undeveloped" argument is as simple as it is irrefutable "The Default Order is inconsistent with Rule 69(a)(1), in that it purports to order third parties, such as Amazon, to immediately turn over funds to Plaintiff, which is contrary to Illinois post judgment proceedings. Moreover, Plaintiff made no attempt to comply with Illinois procedures." Neither the Court nor Plaintiff followed Illinois procedures as required by Rule 69(a)(1).

## VI.     Restitution

Plaintiff does not dispute that this Court should order restitution if it finds that service was invalid, that default was invalid or that Plaintiff did not comply with Rule 69. If the Court rules in favor of Hangzhou Chuanyue, it should also order restitution.

WHEREFORE, Defendant No. 14, Hangzhou Chuanyue Silk Import & Export Co., Ltd. respectfully requests that this Court grant its Motion to Vacate.

Dated: March 13, 2025

          Respectfully Submitted,
          By: /s/Wesley E. Johnson
          Wesley E Johnson
          Cross-Border Counselor LLP
          105 W Madison, Ste 2300
          Chicago IL 60602
          (312)752-4828
          wjohnson@cbcounselor.com

          By: /s/ Benjamin Solter
          Benjamin Solter
          Cross-Border Counselor LLP
          7755 Center Ave., Ste 1100
          Huntington Beach, CA 92647
          (781) 752-6369
          bsolter@cbcounselor.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Motion was electronically filed with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on March 13, 2025.

/s/ Wesley E Johnson